**SOITEC, S.A. and Commissariat A L'Energie Atomique, Plaintiffs–Appellants,**

v.

**SILICON GENESIS CORPORATION, Defendant–Cross Appellant.**

No. 03–1080, 03–1140.

United States Court of Appeals, Federal Circuit.

Nov. 26, 2003.

Rehearing and Rehearing En Banc Denied Jan. 7, 2004.

Before MAYER, Chief Judge, CLEVENGER and SCHALL, Circuit Judges.

PER CURIAM.

Soitec, SA and Commissariat à l'Energie Atomique (collectively "Soitec") brought this patent infringement suit against Silicon Genesis Corporation ("SiGen") for infringing U.S. Patent No. 5,374,564 ("the '564 patent"). After a *Markman* hearing, the United States District Court for the District of Massachusetts entered partial summary judgment that claims 1–3, 5 and 9 of the '564 patent were infringed. At trial the jury returned à verdict that claim 4 was likewise infringed. The jury found, however, that claims 1–3, 5 and 9 were invalid for failing the enablement requirement of 35 U.S.C. § 112, ¶ 1. The jury further found that claim 4 was not willfully infringed. *Soitec v. Silicon Genesis Corp.*, No. 99–CV–10826 (D.Mass. Oct. 21, 2002). Soitec appeals the jury verdict that claims 1–3, 5 and 9 are invalid for non-enablement and that claim 4 was not willfully infringed. SiGen cross-appeals the district court's claim construction, or, alternatively, the court's holding that the claims as construed are not invalid for indefiniteness under 35 U.S.C. § 112, ¶ 2. SiGen also appeals the jury verdict of infringement of claim 4. We *affirm*.

1. SiGen argues in its cross-appeal that the district court improperly asserted personal jurisdiction. A district court may exercise personal jurisdiction over a non-consenting party if the party is amenable to service of process under the appropriate state long-arm statute, and the party's activities within the forum state satisfy the minimum contacts requirement of the due process clause. *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1354 (Fed.Cir.2002)

(citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

SiGen disputes that the reach of the Massachusetts long-arm statue is coextensive with the bounds of due process. We interpret the Massachusetts long-arm statute in accordance with Massachusetts's precedent. *See Hildebrand*, 279 F.3d at 1354. The statute provides, in pertinent part:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
> > (a) transacting any business in this commonwealth

Mass. Gen. Laws ch. 223A, § 3 (2000). While the Massachusetts Supreme Judicial Court interprets the "transacting any business" portion of section 3 broadly, it has clarified that " § 3, asserts jurisdiction over the person to the constitutional limit only when some basis for jurisdiction enumerated in the statute has been established." *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 389 N.E.2d 76, 80 (1979).

■ In September of 1997, SiGen merged with Waban Technology, Inc. ("WTI"). WTI was a Massachusetts corporation founded by Dr. Chung Chan with its principal place of business in Waban, Massachusetts. SiGen described Chan as its cofounder and the developer of the company's PIII system. SiGen advertised "that the systems built by Waban Technology were originally intended for doping semiconductor wafers, but their potential has since been recognized as a viable alternative to beam-line ion implanters for use in the Genesis Process." The Genesis Process is one of the systems accused of infringing the '564 patent. Around the time the complaint was filed, SiGen maintained its PIII equipment development group in Boston. It promoted to potential investors that the PIII equipment was an important part of the Genesis Process. In October of 1997, SiGen leased the former WTI building for an extended period. Contrary to initial assertions, it admitted purchasing subsystems and other equipment directly for its Bedford, Massachusetts, facility, which were used in the PIII equipment. In December of 1998, a periodical described SiGen's newly acquired Boston facility as the place "where the first 300–mm wafer compatible alpha-tool was designed and built." These activities, purchases and business transactions within the forum are intertwined with the accused infringing processes. In the aggregate, SiGen's contacts with the forum were sufficient to meet both the "transacting any business" requirement of the Massachusetts long-arm statute and due process requirements for personal jurisdiction.

2. SiGen contends that the district court erred as a matter of law in construing the disputed claim term "a separation" found in independent claim 1. The court construed "separation" based upon its ordinary meaning to be a "gap or intervening space." SiGen argues that this interpretation ignores intrinsic and extrinsic evidence that "a separation" requires "splitting into two parts." SiGen believes that "separate" necessarily means that the thin film and the stiffener are "split into two pieces" because the stiffener has been dissolved and no "self-supporting" membrane exists if still attached to the stiffener. Therefore, according to SiGen's logic, "a separation" must mean complete splitting or cleaving of the thin film and the substrate.

■ We agree with the district court that the proper interpretation of "a separation" is "an intervening space or gap" between the thin film and the majority of the substrate. The specification of

the '564 patent describes "a separation" created during the thermal treatment "by a crystalline rearrangement effect in the wafer and a pressure effect in the micro-bubbles." The separation results from the thermally induced "crystalline rearrangement" and "coalescence of the bubbles." The specification does not require the "coalescence of the bubbles" to form a perfect cleavage between the top of the film and the bottom substrate. "Splitting or cleaving" the whole layer uniformly is a limitation not found in the '564 patent.

SiGen says that figure 4 depicts a complete cleavage. Drawings aid in the interpretation of claims, but a simple depiction of a single embodiment does not create such a limitation when the words of the specification and claims are broader and more descriptive. See Autogiro Co. of Am. v. United States, 181 Ct.Cl. 55, 384 F.2d 391, 398 (1967) ("In those instances where a visual representation can flesh out words, drawings may be used in the same manner and with the same limitations as the specification.") (citations omitted).

3. The jury determined that SiGen's Genesis Process literally infringed claim 4. SiGen argues that a new trial should be granted because of a faulty jury instruction. Because SiGen declined to file a post-verdict motion, however, it challenges the jury verdict only for legal error or abuse of discretion and not for insufficiency of the evidence. See, e.g., Biodex Corp. v. Loredan Biomedical, Inc., 946 F.2d 850, 862 (Fed.Cir.1991) ("[W]e cannot review the sufficiency of the evidence after a jury verdict absent some post-verdict disposition, either by a deferred ruling or upon a post-verdict motion."). SiGen believes that the district court erred by failing to separate research and development from its commercial processes in the jury instruction. At trial SiGen requested that the court instruct the jury to consider whether three separate activities each constituted infringement: research and development, Genesis Process, and NanoCleave. The district court refused to distinguish the activities and limited the instruction to Genesis Process and NanoCleave.

There is no fair use or research and development exception for infringement of normal commercial processes. See Madey v. Duke Univ., 307 F.3d 1351, 1362 (Fed.Cir.2002) ("the experimental use defense is ... limited to actions performed 'for amusement, to satisfy idle curiosity, or for strictly philosophical inquiry'") (citation omitted). SiGen claims that it infringed the '564 patent nominally in an attempt to "design around" the claims. The district court did not err in instructing "that the same test for infringement should apply to any accused activity, regardless of whether the accused activity took place at the research and development stage or whether it took place at the manufacturing stage." Because infringement during the early stages of process development is nonetheless a violation of patent law, the district court was under no duty to distinguish research and development from later commercial processes. This jury instruction was in accordance with our precedent. See, e.g., Hilton Davis Chem. Co. v. Warner–Jenkinson Co., 62 F.3d 1512, 1527 (Fed.Cir.1995) (en banc) ("[I]ntent is not an element of direct infringement, whether literal or by equivalents.... Infringement is, and should remain, a strict liability offense."). We decline to address infringement of claims 1–3, 5 and 9 because, as discussed below, the claims are invalid for nonenablement.

4. Under the proper claim construction SiGen argues that the claims are indefinite under 35 U.S.C. § 112, ¶ 2. After trial the district court granted Soitec's motion for judgment as a matter of law as to SiGen's indefiniteness defense. Indefiniteness is a

legal determination reviewed de novo. *BJ Servs. Co. v. Halliburton Energy Servs.*, 338 F.3d 1368, 1372 (Fed.Cir.2003). "The definiteness inquiry focuses on whether those skilled in the art would understand the scope of the claim when the claim is read in light of the rest of the specification." *Id.* (citations omitted).

■ SiGen contends that one skilled in the art would be unable to ascertain when "a separation" occurs sufficient to find infringement. "Definiteness problems often arise when words of degree are used in a claim. That some claim language may not be precise, however, does not automatically render a claim invalid." *Id.* at 1372 (citation omitted). Here, considering the context of the claim and the teachings of the specification, one skilled in the art would be able to determine the bounds of the claim. "A separation" must occur during the third stage of heat treatment of the wafer only after ion implantation and attachment of a stiffener. The separation must be caused by a crystalline rearrangement effect in the wafer and a pressure effect in the microbubbles. Objective evidence also suggests that SiGen's own experts were able to understand the bounds of the claims. SiGen failed to prove the claims indefinite under 35 U.S.C. § 112, ¶ 2.

5. The jury returned a verdict that claims 1–3, 5 and 9 were invalid for non-enablement under 35 U.S.C. § 112, ¶ 1. Enablement is a legal determination of whether a patent enables one skilled in the art to make and use the claimed invention. *BJ Servs. Co.*, 338 F.3d at 1371 (citations omitted). "Although enablement is a question of law, because of the factual nature of the inquiry in this case, it is amenable to resolution by the jury. And because a jury decided the issue here based on factual determinations, we look to whether a reasonable jury could have made the underlying factual findings necessary to provide substantial evidence in support of its conclusion." *Id.* at 1371–72 (citations omitted).

■ Claim 1 recites that the bombardment of the donor silicon wafer occurs with "hydrogen *or* rare earth gases." The jury apparently found that the specification failed to explain how "rare earth gases" could be used in the claimed process. The specification details precise critical temperatures for hydrogen implantation as well as other important information relating to the use of hydrogen ions in the process. Considering the unpredictability of the art, the lack of direction and guidance in the specification and the absence of working examples, the jury's finding is well supported. Soitec argues that certain articles describe the use of rare earth gases in the claimed process, and thus provide evidence of enablement. The articles cited, however, were published in 1997, while the patent was filed on September 15, 1992. The publications do not address the state of the art in 1992, and are irrelevant to whether the specification was enabling at the time the patent was filed. *See Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1371 (Fed.Cir.1999) ("Whether claims are sufficiently enabled by a disclosure in a specification is determined as of the date that the patent application was first filed.").

"[A] patent specification must enable the full scope of a claimed invention." *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1241 (Fed.Cir.2003) (citation omitted). When a patentee chooses to claim "A or B," as Soitec has, the specification must fully enable "B" as well as "A" when the differences between "A" and "B" substantially affect the practice of the invention. Here, the jury had before it substantial evidence that hydrogen ions are significantly different from the rare earth gases in mass, bonding capability and diffusion character-

istics. Thus, Soitec's disclosure enabling only hydrogen was insufficient. A reasonable jury could have found that the specification failed to teach one skilled in the art how to make and use the process using "rare earth gases."

6. Soitec challenges the jury finding that SiGen's infringement was not willful. "To establish willful infringement, a plaintiff must prove by clear and convincing evidence that the defendant acted without a reasonable belief that its action avoided infringement." *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed.Cir.2001). We review a jury's finding of willful infringement to determine if there is substantial evidence to support it. *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1583 (Fed.Cir.1996).

The jury had considerable evidence that SiGen's activities were geared toward designing around the claims of the '564 patent. Research and development is not an excuse for literal infringement, but it is proper for the jury to consider an accused infringer's motivations in deciding willfulness. SiGen admittedly crossed the threshold from a clean attempt to design around the claims into activity that was infringing. While this infringement may have given SiGen a competitive advantage in early development, the jury was free to consider the degree and nature of the infringement. Along with believing that SiGen was simply attempting to design around, the jury also had a reasonable basis to find that SiGen believed its actions avoided infringement. Although later found inaccurate, SiGen secured opinions that provided an interpretation of the claims and understanding of the accused process that at least arguably avoided infringement. A reasonable jury could have found that SiGen's infringement was not willful.