NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**ACCENTRA, INC., AND WORKTOOLS, INC.,**
*Plaintiffs-Cross Appellants,*

v.

**STAPLES, INC., AND**
**STAPLES THE OFFICE SUPERSTORE, LLC,**
*Defendants-Appellants.*

---

2012-1237,-1264

---

Appeal from the United States District Court for the Central District of California in Case No. 07-CV-5862, Chief Judge Audrey B. Collins.

---

Decided: January 4, 2013

---

JOSEPH F. POSILLICO, Fox Rothschild, LLP, of Philadelphia, Pennsylvania, argued for plaintiffs-cross appellants. With him on the brief was FRANK T. CARROLL.

BARBARA L. MOORE, Cooley Manion Jones LLP, of Boston, Massachusetts, argued for defendants-appellants. Of counsel on the brief were DAVID COTTA, ANDREW T.

O'CONNOR and PETER J. CUOMO, Edwards Wildman Palmer, LLP, of Boston, Massachusetts.

_____

Before BRYSON, SCHALL, and MOORE, *Circuit Judges*.

BRYSON, *Circuit Judge*.

## I

Plaintiffs Worktools, Inc., and Accentra, Inc., (collectively, "Accentra") are the owners and licensees of several patents concerning staplers. Three are at issue in these appeals. The first, U.S. Patent No. 7,080,768 ("the '768 patent"), issued on July 25, 2006. It is entitled "Spring Energized Desktop Stapler" and is directed to "a spring-actuated desktop stapler that . . . relates to an improved staple track and staple ejection features." '768 patent, col. 2, ll. 17-19. The patent claims a few improvements for desktop staplers, including an "automatic track opening function." *Id.*, cols. 1-3. Descriptions of the automatic track opening feature and its claimed advantages are repeated throughout the specification. *See, e.g.*, *id.*, col. 2, line 15, through col. 3, line 3; col. 5, ll. 36-37; col. 3, ll. 42-46; col. 1, ll. 41-42.

Claims 20 and 21 are at issue here. Independent claim 20 recites:

20. A desktop stapler comprising:

an elongated base including sidewalls;

a body pivotably attached to the base toward a rear end of the stapler, the stapler having a closed stapler position wherein the body extends forward from the pivotal attachment in a sub-

stantially parallel relationship with the base, and an open position of the stapler wherein the body is pivoted away from the base;

a track assembly including a track pull disposed at a bottom of the body, wherein the base sidewalls surround the track pull in the closed stapler position;

and wherein the track assembly is slidably fitted to the body having an inward track position with the track assembly under the body, and movable to extend rearward from the body in the open position of the stapler so that the track pull extends beyond the base sidewalls to be exposed outside the base sidewalls.

'768 patent, col. 12, ll. 3-23. Dependent claim 21 covers "[t]he stapler of claim 20, wherein a track chamber is at least partially exposed when the track assembly is moved rearward." *Id.*, col. 12, ll. 24-26.

The second patent in question is U.S. Patent No. 7,290,692 ("the '692 patent"), entitled "Stapler Safety Device to Limit Motion of Striker." It issued on November 6, 2007. The '692 patent is directed to a safety mechanism that prevents a stapler's "striker"—the part that strikes and discharges staples—from moving until the safety mechanism on the stapler's handle comes into contact with the objects to be stapled, or with the base, when the handle is pressed all the way down. Asserted claims 6, 7, and 9 are similar. Claim 6 recites, in relevant part,

a locking means disposed at the front end of the body and having a first portion that is biased out

from the bottom of the body, the locking means having a second portion that is biased to advance into at least one of the power spring, striker, and handle to prevent at least one of the power spring, striker, and handle respectively from moving to complete a cycle to eject the fasteners from the guide track, wherein the first portion of the of the [sic] locking means presses the cover plate adjacent to the depression while in the pressed position of the base to retract the second portion.

'692 patent, col. 13, ll. 34-44.

U.S. Patent No. 7,178,709 ("the '709 patent"), entitled "Spring Energized Desktop Stapler," also issued in 2007. It claims a desktop stapler that reduces the amount of force the user needs to apply to the handle by storing energy in a spring and releasing it all at once to discharge a staple. Unlike so-called "direct acting" staplers, in which the motion of the striker corresponds to the motion of the handle, the stapler of the '709 patent has a handle that "can move more than the striker moves to provide enhanced leverage." '709 patent, col. 1, ll. 49-51. When the handle is "pressed near its front end," for example, it "may move downward one inch as the spring is deflected, while the striker moves just ½ inch when the spring is released." *Id.*, col. 1, ll. 51-54. "[T]he low operating force makes [the stapler] easy to use with an extended hand on a desk [or] even . . . by fingertips." *Id.*, col. 3, ll. 31-33.

The '709 patent refers to the invention as embodying a "very compact" firing mechanism that requires the application of minimal force by the user but still allows the stapler to "maintain a conventional looking size." '709 patent, col. 3, ll. 9-10; *see also id.*, col. 7, ll. 28-29 ("a

reasonably sized device resembling a desktop stapler requires a very compact design"). Several of the claims reference specific distances that the handle moves in the course of the stapling process. *E.g.*, *id.*, col. 18, ll. 36-38.

Independent claims 24 and 27, along with dependent claims 25 and 28, are asserted here. Claim 24 reads, in relevant part:

> 24. A desktop stapler, comprising:
>
> a body with a handle pivotably attached to the body, the handle including a pressing area near a front end of the handle; . . .
>
> wherein the handle at the pressing area moves about 0.9 to 1 inch inclusive toward the base as the handle moves from the rest position to the pre-release position.

'709 patent, col. 18, ll. 15-38. Claim 27 reads, in relevant part:

> 27. A desktop stapler, comprising:
>
> a body with a handle pivotably attached to the body, the handle including a pressing area near a front end of the handle; . . .
>
> where the handle is moved toward the base, including a handle pressing area distance defined by the distance between the pressing area at the rest position and the pressing area at the pre-release position; . . .
>
> and wherein the pressing distance is about double the distance that the striker moves toward the

> base between the striker pre-release position and the striker lowest position.

*Id.*, col. 18, line 48, through col. 19, line 10.

## II

In 2004, Accentra entered into an agreement with defendants Staples, Inc., and Staples the Office Superstore, LLC (collectively, "Staples"), to sell Accentra's staplers under Staples' ONE-TOUCH brand. Accentra terminated the agreement in 2007. Staples then began to sell staplers of its own design. Later that year, Accentra brought suit against Staples alleging that those staplers infringed Accentra's patents and its common law trademark rights.

With regard to claim 20 of the '768 patent, Staples' claim construction focused on the limitation providing that the stapler handle is "movable to extend rearward from the body in the open position of the stapler so that the track pull extends beyond the base sidewalls to be exposed outside the base sidewalls." That limitation, Staples argued, requires that the stapler automatically eject the track pull when the handle nears the fully open position. The district court disagreed and held that claim 20 did not require automatic ejection of the track pull; the court construed that language to include both automatic and manual mechanisms for releasing the track pull when the stapler is opened.

With respect to the '692 patent, Staples argued that the terms "biasing the fasteners" and "biasing at least one fastener" in claims 6 and 7 should be construed to require that staples be present in order for an accused device to infringe. The court rejected that construction, holding

that the claims cover the stapler regardless of whether it is loaded with staples.

Finally, as to the '709 patent, Staples argued that asserted claims 24 and 27 were invalid for indefiniteness because the term "pressing area" and the dimensions set forth in the claims were indeterminate. Based on language in the claims, the court defined the "pressing area" on the handle to be "the surface area on the handle which moves about 0.9 to 1 inch toward the base as the handle moves from the rest position to the pre-release position, measured by whichever creates a smaller area of (a.) the distance traveled along an axis perpendicular to the base or (b.) the straight line distance traveled by a point between the two positions." In light of that construction, the court concluded that the claims were not fatally indefinite.

Following trial, the jury returned a verdict for Accentra on all counts. The jury found that each of the three asserted patents was valid and infringed, and that the infringement was willful. Based on a finding as to the reasonable royalty, the jury awarded damages of $2.2 million. Staples moved for judgment as a matter of law, arguing again that the asserted claims of the '709 patent were invalid for indefiniteness and that there was insufficient evidence to support the verdicts of infringement as to the other two patents. Staples also challenged the willfulness findings and the damages award. Accentra moved for enhanced damages based on the jury's finding of willfulness.

The district court granted partial relief to each party. First, the court reversed its earlier ruling and held that the '709 patent was invalid as indefinite. With respect to the distance the pressing area of the handle was required

to move, the court found that the "inability to determine which method of measurement to use is critical to definiteness because the method used can determine whether the pressing area is 'near' the front end of the handle and whether an accused stapler has a handle that moves the required distance at the pressing area."  The court found "no intrinsic or extrinsic evidence illuminat[ing] the outcome-determinative issue of which method of measurement [to] use[]."  For that reason, the court found the asserted claims to be ambiguous and therefore invalid.

The court denied Staples' challenges to the sufficiency of the evidence with respect to the '692 and '768 patents. As to the '692 patent, the court held that the evidence regarding the structural equivalence between the accused devices and the embodiments of the safety mechanisms disclosed in the specification was sufficient to support the jury's verdict.  As to the '768 patent, the court held that the evidence was sufficient to support the jury's infringement verdict based on its earlier claim constructions.

With respect to damages, the court began by rejecting Staples' renewed argument that the testimony of Accentra's damages expert, Glenn Newman, should have been excluded due to his alleged failure to tie the demand for accused devices to the patented features.  The court noted that Mr. Newman "testified (albeit summarily) to the link between the patented features collectively and demand for the accused staplers," and it ruled that Mr. Newman's testimony about a hypothetical license for all three patents together was sufficiently reliable to be admissible. However, the court found the jury's award of $2.2 million to be problematic, for two reasons.  First, the award represented an effective royalty rate higher than the 10 percent rate proffered by Mr. Newman.  Even in light of Mr. Newman's testimony, the court explained, "the most

the jury could have awarded in royalty damages was $1,678,613." Second, the jury award was based on a finding of infringement of all three patents, including the '709 patent, which the court had held invalid. Although Mr. Newman had not apportioned his royalty rate on a patent-by-patent basis, the court borrowed the patent-by-patent apportionment used by Staples' expert and applied it to Mr. Newman's 10 percent rate, leading the court to conclude that it could uphold an award of damages in the amount of approximately $1 million. The court left it to the parties to perform the final damages calculations based on the court's formula.

As to the issue of willfulness, the court agreed with Staples that "insufficient evidence was offered to demonstrate willful infringement of the '768 and '692 patents." The court therefore set aside the jury's willfulness finding with regard to those two patents.

Both parties have appealed and have raised many—too many—issues.

III

A

Our cases instruct that when a patent "describes the features of the 'present invention' as a whole, this description limits the scope of the invention." *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007); *see also, e.g.*, *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1367-68 (Fed. Cir. 2007); *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340-45 (Fed. Cir. 2001). Applying that principle to claim 20 of the '768 patent, we conclude that the claim is limited to track pulls that open auto-

matically when the stapler handle and body are rotated away from the stapler base.

The '768 specification makes it clear that the automatic opening feature is central to the invention of that patent. Most notably, the specification contrasts the automatic opening feature with "a typical prior art stapler without the automatic opening feature of the present invention." '768 patent, col. 5, ll. 27-43. Figures 3 and 4 depict this difference, showing a track pull 60a that is still closed when the prior art stapler has been rotated to its open position in Figure 4 and a track pull 60 that has been automatically opened and needs only to be "urg[ed] . . . in any way to the rear" in Figure 3:



*Id.*; *see also* col. 3, ll. 42-46 (describing the "automatic opening features" present in Figure 3 and not Figure 4). The patent also contains several other references that characterize the automatic opening feature as central to the "present invention," *see id.*, col. 2, ll. 32-33 ("present invention provides an automatic track opening function"); col. 1, ll. 41-42 ("improvement of the present invention is an automatic opening mechanism"). A discussion of the automatic opening feature occupies most of Summary of Invention, *id.*, col. 2, line 15, through col. 3, line 3, and

the Abstract begins by characterizing the invention as a desktop stapler that "includes an automatic opening staple track." Nowhere does the specification describe a manual opening feature, other than to disparage such features in the prior art. *See, e.g.*, *id.*, col. 5, ll. 36-43.

Despite the specification's focus on automatic opening track pulls, the district court found that claim 20 does not require that function. Relying on the distinction between claims 15 and 20, the court agreed with Accentra that claim 15 covers automatic opening and claim 20 does not, because claim 15 uses the verb "moved," while claim 20 uses the adjective "movable." *Compare* '768 patent, col. 11, line 17 ("the track assembly is moved rearward"), *with* col. 12, ll. 17-19 ("the track assembly is . . . movable to extend rearward").

We disagree. The use of "moved" and "movable" in claims 15 and 20 simply reflects the different positions of the stapler body described in each claim. Claim 15 speaks of the "intermediate position" of the stapler body, while claim 20 references the "open position," in which the stapler body has been pivoted all the way back from the base so that the track pull is fully exposed. In the intermediate position, the stapler body is still in the process of being opened, and the track assembly is therefore still being "moved." Figures 1 and 2 illustrate this "intermediate position," which represents "the initial steps of automatically opening the track." '768 patent, col. 4, ll. 34, 44-45. Claims 7 and 8 similarly describe a track assembly in the intermediate position as being actively "pull[ed]." *Id.*, col. 10, ll. 16-22. In the open position that is the subject of claim 20, by contrast, the automatic opening mechanism has completed its work. *Id.*, col. 5, ll. 27-28. At that point, the track assembly is still "movable rearward" to extend all the way out from the stapler body,

but it has been automatically opened part of the way. As the patent explains, "[w]ith the automatic opening operation the user finds the track in a partially out position just from opening the stapler body for loading. It is merely needed to contact any part of the track or track pull and urge it outward." *Id.*, col. 2, ll. 48-52; *see also id.*, col. 5, ll. 31-33. The track assembly is thus still "movable rearward" when open, even if it is not in the active process of being "moved rearward" as it is in the intermediate position.[1]

We are not persuaded by Accentra's contention that claim 20, if construed not to cover automatic opening, is nonetheless inventive because it claims "sidewalls that surround." If "sidewalls that surround" were truly the "novel and non-obvious feature" that Accentra now asserts it to be, we would expect to see it described as such somewhere in the patent. Tellingly, however, the patent is replete with descriptions of the "present invention" and its features, including the automatic opening feature, but nowhere does it indicate that having "sidewalls that surround" is inventive.

Our disposition of this issue obviates the need to consider Staples' alternative arguments concerning the '768 patent, including its argument that claim 20 is invalid for obviousness, as that argument was based on the district court's claim construction.

---

[1]    Claim 21, which depends from claim 20 and is also asserted here, uses the word "moved" to describe "the stapler of claim 20"; the use of "moved" in claim 21 suggests that the patentee did not intend to draw the sharp distinction for which Accentra argues between the word "moveable" (as used in independent claim 20) and the word "moved" (as used in independent claim 15 and dependent claim 21).

B

With respect to the '692 patent, Staples appeals the jury's finding of infringement on two grounds. The parties agree that the asserted claims of that patent, claims 6, 7, and 9, are "means plus function" claims governed by 35 U.S.C. § 112, ¶ 6 (now recodified as 35 U.S.C. § 112(f)). Staples argues that its accused staplers do not infringe, because the safety mechanisms on its staplers are not equivalent to the structures set forth in the '692 specification corresponding to those claims. Staples points out that the structures described in the specification use a one-piece, pivoting mechanism to block the striker when the safety device is on; the accused staplers use a two-piece sliding mechanism to block the striker. Both mechanisms use a cam to move the blocking device out of the way of the striker to allow the striker to eject staples. While the structures are slightly different, we agree with the district court that there was substantial evidence to support the jury's finding that Staples' devices are structurally equivalent to the devices described in the specification. That evidence included detailed expert testimony concerning the patented features and the accused devices, which gave the jury a sound basis for comparing the two. While Staples complains that Accentra's expert did not articulate his opinion as to equivalence with sufficient precision, we have reviewed the evidence and are satisfied that the jury had firm support for its verdict.

Staples makes a separate argument that the asserted claims read on a stapler with staples loaded in it. Because the accused devices were sold empty, Staples argues, those devices did not infringe. That argument need not detain us for long. Suffice it to say that we find nothing in the claim language to support Staples'

cramped interpretation that the claims to a stapler are infringed only when the stapler is sold loaded.

C

Accentra's cross-appeal focuses mainly on the district court's post-trial finding that the '709 patent is indefinite and invalid. We agree with Accentra that the court erred in that respect. Because we find that the district court's indefiniteness ruling was based on an error in claim construction that could have affected the jury's consideration of Staples' obviousness challenge, we vacate the district court's ruling on indefiniteness and remand for the district court to reconsider the issue of obviousness in light of the proper claim construction.

Representative claim 24 recites a stapler comprising "a body with a handle pivotably attached to the body, the handle including a pressing area near a front end of the handle; . . . wherein the handle at the pressing area moves about 0.9 to 1 inch inclusive toward the base as the handle moves from the rest position to the pre-release position." '709 patent, col. 18, ll. 15-38. As noted, the district court construed the stapler's "pressing area" as the area on the surface of the handle that moves "about 0.9 to 1 inch toward the base as the handle moves from the rest position to the pre-release position." After determining the location of the "pressing area" by determining what portion of the handle travels the requisite distance, the district court then sought to determine whether the pressing area was "near" the front of the handle.

The district court's claim construction was mistaken because it defined the pressing area in terms of the distance the handle at the pressing area was required to

move toward the stapler base. That construction is inconsistent with the structure of the claims as written. Contrary to the district court's construction, the claims first define the pressing area as being "near a front end of the handle." '709 patent, col. 18, ll. 17-18, 50-51. The claims then instruct that the pressing area must travel a certain distance—"about 0.9 to 1 inch inclusive toward the base" in claim 24. *Id.*, col. 18, ll. 36-37. That limitation is not part of the definition of the pressing area, but is a separate limitation reciting how far the pressing area may travel. As further evidence that the term "pressing area" is not defined by its travel distance, it is telling that claim 27, which also recites "a pressing area near a front end of the handle," makes no mention of a travel distance of 0.9 to 1 inch. Rather, claim 27 recites that the "pressing distance," i.e., "the distance between the pressing area at the rest position and the pressing area at the pre-release position," is "about double the distance that the striker moves toward the base." *Id.*, col. 18, ll. 60-62; col. 19, ll. 8-9. Only in dependent claim 28 does the distance of 0.9 to 1 inch reappear in the claim language. *See id.*, col. 18, line 50, through col. 20, line 4.

Based in part on its erroneous claim construction, the district court found the '709 patent to be indefinite. We disagree with the court's conclusion. The definiteness requirement seeks to "ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005). To do so does not require "absolute clarity" or precision in claim language; this court has ruled that claims are not invalid for indefiniteness unless they are "'not amenable to construction' or 'insolubly ambiguous.'" *Id.* Overcoming the presumption of patent validity, therefore, demands clear and convincing evi-

dence that "a skilled artisan could not discern the boundaries of the claim." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008). There is no such clear and convincing evidence here.

Much of the district court's analysis focused on the parties' dispute over how to measure the distance that a stapler's pressing area moves. The district court accepted the assertion that there is more than one legitimate way to measure the distance that a stapler handle travels, including the so-called "vertical" method (the vertical distance between the starting point of the pressing area and its stopping point) and "point-to-point" method (the diagonal distance traveled by a particular point on the handle between its starting and stopping points). The district court found that the patent did not specify which method should be used and that the selection of a particular methodology is "outcome-determinative." Accordingly, the court held that this court's decision in *Honeywell International, Inc. v. International Trade Commission*, 341 F.3d 1332 (Fed. Cir. 2003), mandated a finding of invalidity.

Even assuming that there are several different ways to measure the handle travel distance, Staples has not presented clear and convincing evidence that the choice of one or the other makes enough difference to render the patent indefinite. Any minor differences can be accounted for in the claims' use of the word "about"—a term that, when considered in context, is not ordinarily regarded as giving rise to fatal indefiniteness. *See, e.g.*, *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1554 (Fed. Cir. 1996) ("Although it is rarely feasible to attach a precise limit to 'about,' the usage can usually be understood in light of the technology embodied in the invention."); *BJ Servs. Co. v. Halliburton Energy Servs., Inc.*,

338 F.3d 1368, 1372-73 (Fed. Cir. 2003) (affirming a jury verdict that the term "about 0.06" did not render the claim indefinite, even though the specification did not describe how to calculate the relevant measurement). The only evidence cited by the district court to show that the choice of measurement methodology could place the same accused device on different sides of the line between infringement and non-infringement was the recanted deposition testimony of Accentra's expert. That is not enough.

Nor do we believe that the use of the term "near" in the claims ("a pressing area near a front end of the handle") renders the '709 patent indefinite. "Near" is a word whose meaning is dictated by context. We have previously held that the term "near" is not indefinite when used to denote a particular location and when the context does not create insoluble ambiguity. *See Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348-49 (Fed. Cir. 2010); *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1345-47 (Fed. Cir. 2007). Staplers require leverage on the handle to operate and, as the patent makes clear, users typically apply pressure near the front of the handle, where the lever's mechanical advantage is the greatest. In this context, we find that the term is sufficiently precise to describe the location of the area that is pressed to discharge staples. The word is used throughout the '709 patent in a variety of contexts, including in other claims. *See, e.g.*, '709 patent, col. 1, ll. 51-52; col. 5, line 19; col. 10, line 60; col. 12, line 6; col. 15, ll. 43-44 (claim 8); col. 16, line 65 (claim 12). Consistent with its ordinary meaning, we construe it to mean "at or in the vicinity of."[2]

---

[2]    At oral argument, Accentra took the position that the phrase "near a front end of the handle" means in "the front half" of the handle. We do not accept that definition,

Whatever play remains in that construction is not enough to render the patent indefinite.

To summarize, the '709 patent recites a pressing area "near" a front end of the handle, which we construe to mean "at or in the vicinity of" the handle's front end. Where the claims further limit the distance over which the pressing area travels, that distance must be what the claims say it is—"about 0.9 to 1 inch inclusive toward the base," for instance. We have carefully considered Staples' many arguments about the alleged indefiniteness of the '709 patent and hold that the patent, as so construed, is not invalid as indefinite.

Our ruling on indefiniteness, however, does not mean that the district court should simply reinstate the jury's verdict on the '709 patent. Staples also contends that the '709 patent is invalid for obviousness. According to Staples, prior art staplers had pressing areas on their handles that traveled distances that were slightly more or slightly less than the 0.9 to 1 inch distance claimed in the '709 patent. On appeal, Accentra has not even responded to this argument. Because the obviousness determinations that were made below were made under an erroneous claim construction, the issue warrants a fresh look under the correct construction. We remand for the district court's consideration of the matter in the first instance.

---

which would treat the term "near a front end of the handle" as if it read "nearer to the front end of the handle than to the rear end." We also wonder whether Accentra would continue to embrace that broad interpretation of the term "near" in the context of the obviousness challenge to the claims on remand.

D

The jury awarded Accentra approximately $2.2 million in reasonable royalty damages based on $16.7 million in sales of the accused devices. The awarded amount was higher than any figure proffered by either party's expert. Accentra's expert testified that all three patents would have together commanded a royalty rate of 10 percent in a hypothetical negotiation, while Staples' expert testified that the appropriate royalty rates were 0.6% each for the '768 and '709 patents and 0.3% for the '692 patent. The district court reduced the $2.2 million reasonable royalty award to an amount consistent with the 10 percent reasonable royalty rate that Accentra's evidence supported. Both Accentra's expert testimony and the jury's verdict, however, were premised on a judgment finding all three patents to be valid and infringed. Because we have vacated the judgment as to two of the three patents, we believe that the proper course is to vacate the damages award in its entirety and remand for further proceedings so that the district court can revisit the damages issue based on its reevaluation of the liability issues in light of this decision.

E

We have carefully considered the remaining issues on appeal, including Accentra's challenge to the district court's disposition on its trademark infringement claim and on willfulness, and we affirm the district court's rulings on each of those issues.

Each party shall bear its own costs for this appeal.

**AFFIRMED IN PART, REVERSED IN PART, and VACATED AND REMANDED IN PART**