(Slip Opinion) OCTOBER TERM, 2017 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## WESTERNGECO LLC *v.* ION GEOPHYSICAL CORP.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 16–1011.   Argued April 16, 2018—Decided June 22, 2018

Petitioner WesternGeco LLC owns patents for a system used to survey the ocean floor.  Respondent ION Geophysical Corp. began selling a competing system that was built from components manufactured in the United States, shipped to companies abroad, and assembled there into a system indistinguishable from WesternGeco's.  WesternGeco sued for patent infringement under 35 U. S. C. §§271(f)(1) and (f)(2). The jury found ION liable and awarded WesternGeco damages in royalties and lost profits under §284.  ION moved to set aside the verdict, arguing that WesternGeco could not recover damages for lost profits because §271(f) does not apply extraterritorially.  The District Court denied the motion, but the Federal Circuit reversed.  ION was liable for infringement under §271(f)(2), the court reasoned, but §271(f) does not allow patent owners to recover for lost foreign profits On remand from this Court in light of *Halo Electronics, Inc.* v. *Pulse Electronics, Inc.*, 579 U. S. \_\_\_\_, the Federal Circuit reinstated the portion of its decision regarding §271(f)'s extraterritoriality.

*Held*: WesternGeco's award for lost profits was a permissible domestic application of §284 of the Patent Act.  Pp. 4–10.

(a) The presumption against extraterritoriality assumes that federal statutes "apply only within the territorial jurisdiction of the United States." *Foley Bros., Inc.* v. *Filardo,* 336 U. S. 281, 285.  The two-step framework for deciding extraterritoriality questions asks, first, "whether the presumption . . . has been rebutted." *RJR Nabisco, Inc.* v. *European Community*, 579 U. S. \_\_\_, \_\_\_.  If not, the second step asks "whether the case involves a domestic application of the statute." *Id.*, at \_\_\_.  Courts make the second determination by identifying "the statute's 'focus'" and then asking whether the conduct relevant to that focus occurred in United States territory. *Ibid.*

If so, the case involves a permissible domestic application of the stat-
ute. It is "usually . . . preferable" to begin with step one, but courts
have the discretion to begin with step two "in appropriate cases." *Id.*,
at ___, n. 5. The Court exercises that discretion here. Pp. 4–5.

   (b) When determining "the statute's 'focus'"—*i.e.*, "the objec[t] of
[its] solicitude," *Morrison* v. *National Australia Bank Ltd.,* 561 U. S.
247, 267—the provision at issue is not analyzed in a vacuum. If it
works in tandem with other provisions, it must be assessed in concert
with those provisions. Section 284, the Patent Act's general damages
provision, states that "the court shall award the claimant damages
adequate to compensate for the infringement." The focus of that pro-
vision is "the infringement." The "overriding purpose" of §284 is to
"affor[d] patent owners complete compensation" for infringements.
*General Motors Corp.* v. *Devex Corp.*, 461 U. S. 648, 655. Section 271
identifies several ways that a patent can be infringed. Thus, to de-
termine §284's focus in a given case, the type of infringement that oc-
curred must be identified. Here, §271(f)(2) was the basis for West-
ernGeco's infringement claim and the lost-profits damages that it
received. That provision regulates the domestic act of "suppl[ying] in
or from the United States," and this Court has acknowledged that it
vindicates domestic interests, see, *e.g.*, *Microsoft Corp.* v. *AT&T
Corp.,* 550 U. S. 437, 457. In sum, the focus of §284 in a case involv-
ing infringement under §271(f)(2) is on the act of exporting compo-
nents from the United States. So the conduct in this case that is rel-
evant to the statutory focus clearly occurred in the United States.
Pp. 5–8.

   (c) ION's contrary arguments are unpersuasive. The award of
damages is not the statutory focus here. The damages themselves
are merely the means by which the statute achieves its end of reme-
dying infringements, and the overseas events giving rise to the lost-
profit damages here were merely incidental to the infringement. In
asserting that damages awards for foreign injuries are always an ex-
traterritorial application of a damages provision, ION misreads a
portion of *RJR Nabisco* that interpreted a substantive element of a
cause of action, not a remedial damages provision. See 579 U. S., at
___. Pp. 8–9.

837 F. 3d 1358, reversed and remanded.

   THOMAS, J., delivered the opinion of the Court, in which ROBERTS,
C. J., and KENNEDY, GINSBURG, ALITO, SOTOMAYOR, and KAGAN, JJ.,
joined. GORSUCH, J., filed a dissenting opinion, in which, BREYER, J.,
joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———

No. 16–1011

———

## WESTERNGECO LLC, PETITIONER *v.* ION GEOPHYSICAL CORPORATION

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[June 22, 2018]

JUSTICE THOMAS delivered the opinion of the Court.

Under the Patent Act, a company can be liable for patent infringement if it ships components of a patented invention overseas to be assembled there. See 35 U. S. C. §271(f)(2). A patent owner who proves infringement under this provision is entitled to recover damages. §284. The question in this case is whether these statutes allow the patent owner to recover for lost foreign profits. We hold that they do.

I

The Patent Act gives patent owners a "civil action for infringement." §281. Section 271 outlines several types of infringement. The general infringement provision, §271(a), covers most infringements that occur "within the United States." The subsection at issue in this case, §271(f), "expands the definition of infringement to include supplying from the United States a patented invention's components." *Microsoft Corp.* v. *AT&T Corp.*, 550 U. S. 437, 444–445 (2007). It contains two provisions that "work in tandem" by addressing "different scenarios." *Life Technologies Corp.* v. *Promega Corp.*, 580 U. S. \_\_\_, \_\_\_

(2017) (slip op., at 9). Section 271(f)(1) addresses the act of exporting a substantial portion of an invention's components:

> "Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer."

Section 271(f)(2), the provision at issue here, addresses the act of exporting components that are specially adapted for an invention:

> "Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer."

Patent owners who prove infringement under §271 are entitled to relief under §284, which authorizes "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."

## II

Petitioner WesternGeco LLC owns four patents relating

to a system that it developed for surveying the ocean floor. The system uses lateral-steering technology to produce higher quality data than previous survey systems. Western-Geco does not sell its technology or license it to competitors. Instead, it uses the technology itself, performing surveys for oil and gas companies. For several years, WesternGeco was the only surveyor that used such lateral-steering technology.

In late 2007, respondent ION Geophysical Corporation began selling a competing system. It manufactured the components for its competing system in the United States and then shipped them to companies abroad. Those companies combined the components to create a surveying system indistinguishable from WesternGeco's and used the system to compete with WesternGeco.

WesternGeco sued for patent infringement under §§271(f)(1) and (f)(2). At trial, WesternGeco proved that it had lost 10 specific survey contracts due to ION's infringement. The jury found ION liable and awarded WesternGeco damages of $12.5 million in royalties and $93.4 million in lost profits. ION filed a post-trial motion to set aside the verdict, arguing that WesternGeco could not recover damages for lost profits because §271(f) does not apply extraterritorially. The District Court denied the motion. 953 F. Supp. 2d 731, 755–756 (SD Tex. 2013).

On appeal, the Court of Appeals for the Federal Circuit reversed the award of lost-profits damages. *WesternGeco LLC* v. *ION Geophysical Corp.*, 791 F. 3d 1340, 1343 (2015).[1] The Federal Circuit had previously held that §271(a), the general infringement provision, does not allow patent owners to recover for lost foreign sales. See *id.,* at 1350–1351 (citing *Power Integrations, Inc.* v. *Fairchild*

---

[1] The Federal Circuit held that ION was liable for infringement under §271(f)(2). *WesternGeco*, 791 F. 3d, at 1347–1349. It did not address whether ION was liable under §271(f)(1). *Id.*, at 1348.

*Semiconductor Int'l, Inc.*, 711 F. 3d 1348 (CA Fed. 2013)). Section 271(f) should be interpreted the same way, the Federal Circuit reasoned, because it was "designed" to put patent infringers "in a similar position." *WesternGeco*, 791 F. 3d, at 1351. Judge Wallach dissented. See *id.,* at 1354–1364. WesternGeco petitioned for review in this Court. We granted the petition, vacated the Federal Circuit's judgment, and remanded for further consideration in light of our decision in *Halo Electronics, Inc.* v. *Pulse Electronics, Inc.*, 579 U. S. ___ (2016). *WesternGeco LLC* v. *ION Geophysical Corp.*, 579 U. S. ___ (2016).

On remand, the panel majority reinstated the portion of its decision regarding the extraterritoriality of §271(f). 837 F. 3d 1358, 1361, 1364 (CA Fed. 2016). Judge Wallach dissented again, *id.,* at 1364–1369, and we granted certiorari again, 583 U. S. ___ (2018). We now reverse.

## III

Courts presume that federal statutes "apply only within the territorial jurisdiction of the United States." *Foley Bros., Inc.* v. *Filardo*, 336 U. S. 281, 285 (1949). This principle, commonly called the presumption against extraterritoriality, has deep roots. See A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts §43, p. 268 (2012) (tracing it to the medieval maxim *Statuta suo clauduntur territorio, nec ultra territorium disponunt*); *e.g., United States* v. *Palmer*, 3 Wheat. 610, 631 (1818) (Marshall, C. J.) ("[G]eneral words must . . . be limited to cases within the jurisdiction of the state"). The presumption rests on "the commonsense notion that Congress generally legislates with domestic concerns in mind." *Smith* v. *United States*, 507 U. S. 197, 204, n. 5 (1993). And it prevents "unintended clashes between our laws and those of other nations which could result in international discord." *EEOC* v. *Arabian American Oil Co.*, 499 U. S. 244, 248 (1991).

This Court has established a two-step framework for deciding questions of extraterritoriality. The first step asks "whether the presumption against extraterritoriality has been rebutted." *RJR Nabisco, Inc.* v. *European Community*, 579 U. S. \_\_\_, \_\_\_ (2016) (slip op., at 9). It can be rebutted only if the text provides a "clear indication of an extraterritorial application." *Morrison* v. *National Australia Bank Ltd.*, 561 U. S. 247, 255 (2010). If the presumption against extraterritoriality has not been rebutted, the second step of our framework asks "whether the case involves a domestic application of the statute." *RJR Nabisco*, 579 U. S., at \_\_\_ (slip op., at 9). Courts make this determination by identifying "the statute's 'focus'" and asking whether the conduct relevant to that focus occurred in United States territory. *Ibid.* If it did, then the case involves a permissible domestic application of the statute. See *ibid.*

We resolve this case at step two. While "it will usually be preferable" to begin with step one, courts have the discretion to begin at step two "in appropriate cases." See *id.,* at \_\_\_, n. 5 (slip op., at 10, n. 5) (citing *Pearson* v. *Callahan*, 555 U. S. 223, 236–243 (2009)). One reason to exercise that discretion is if addressing step one would require resolving "difficult questions" that do not change "the outcome of the case," but could have far-reaching effects in future cases. See *id.,* at 236–237. That is true here. WesternGeco argues that the presumption against extraterritoriality should never apply to statutes, such as §284, that merely provide a general damages remedy for conduct that Congress has declared unlawful. Resolving that question could implicate many other statutes besides the Patent Act. We therefore exercise our discretion to forgo the first step of our extraterritoriality framework.

## A

Under the second step of our framework, we must iden-

tify "the statute's 'focus.'" *RJR Nabisco*, *supra*, at ___ (slip op., at 9). The focus of a statute is "the objec[t] of [its] solicitude," which can include the conduct it "seeks to 'regulate,'" as well as the parties and interests it "seeks to 'protec[t]'" or vindicate. *Morrison*, *supra*, at 267 (quoting *Superintendent of Ins. of N. Y.* v. *Bankers Life & Casualty Co.*, 404 U. S. 6, 12, 10 (1971)). "If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application" of the statute, "even if other conduct occurred abroad." *RJR Nabisco*, 579 U. S., at ___ (slip op., at 9). But if the relevant conduct occurred in another country, "then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U. S. territory." *Ibid.*

When determining the focus of a statute, we do not analyze the provision at issue in a vacuum. See *Morrison*, *supra,* at 267–269. If the statutory provision at issue works in tandem with other provisions, it must be assessed in concert with those other provisions. Otherwise, it would be impossible to accurately determine whether the application of the statute in the case is a "domestic application." *RJR Nabisco*, 579 U. S., at ___ (slip op., at 9). And determining how the statute has actually been applied is the whole point of the focus test. See *ibid.*

Applying these principles here, we conclude that the conduct relevant to the statutory focus in this case is domestic. We begin with §284. It provides a general damages remedy for the various types of patent infringement identified in the Patent Act. The portion of §284 at issue here states that "the court shall award the claimant damages adequate to compensate for the infringement." We conclude that "the infringement" is the focus of this statute. As this Court has explained, the "overriding purpose" of §284 is to "affor[d] patent owners complete compensation" for infringements. *General Motors Corp.* v.

*Devex Corp.,* 461 U. S. 648, 655 (1983). "The question" posed by the statute is "'how much ha[s] the Patent Holder . . . suffered by the infringement.'" *Aro Mfg. Co.* v. *Convertible Top Replacement Co.*, 377 U. S. 476, 507 (1964). Accordingly, the infringement is plainly the focus of §284.

But that observation does not fully resolve this case, as the Patent Act identifies several ways that a patent can be infringed. See §271. To determine the focus of §284 in a given case, we must look to the type of infringement that occurred. We thus turn to §271(f)(2), which was the basis for WesternGeco's infringement claim and the lost-profits damages that it received.[2]

Section 271(f)(2) focuses on domestic conduct. It provides that a company "shall be liable as an infringer" if it "supplies" certain components of a patented invention "in or from the United States" with the intent that they "will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States." The conduct that §271(f)(2) regulates—*i.e.,* its focus—is the domestic act of "suppl[ying] in or from the United States." As this Court has acknowledged, §271(f) vindicates domestic interests: It "was a direct response to a gap in our patent law," *Microsoft Corp.*, 550 U. S., at 457, and "reach[es] components that are manufactured in the United States but assembled overseas," *Life Technologies*, 580 U. S., at \_\_\_ (slip op., at 11). As the Federal Circuit explained, §271(f)(2) protects against "domestic entities who export components . . . from the United States." 791 F. 3d, at 1351.

In sum, the focus of §284, in a case involving infringement under §271(f)(2), is on the act of exporting components from the United States. In other words, the domes-

_____

[2] Because the Federal Circuit did not address §271(f)(1), see n. 1, *supra*, we limit our analysis to §271(f)(2).

tic infringement is "the objec[t] of the statute's solicitude" in this context. *Morrison*, 561 U. S., at 267. The conduct in this case that is relevant to that focus clearly occurred in the United States, as it was ION's domestic act of supplying the components that infringed WesternGeco's patents. Thus, the lost-profits damages that were awarded to WesternGeco were a domestic application of §284.

B

ION's arguments to the contrary are not persuasive. ION contends that the statutory focus here is "self-evidently on the award of damages." Brief for Respondent 22. While §284 does authorize damages, what a statute authorizes is not necessarily its focus. Rather, the focus is "the objec[t] of the statute's solicitude"—which can turn on the "conduct," "parties," or interests that it regulates or protects. *Morrison*, *supra*, at 267. Here, the damages themselves are merely the means by which the statute achieves its end of remedying infringements. Similarly, ION is mistaken to assert that this case involves an extraterritorial application of §284 simply because "lost-profits damages occurred extraterritorially, and foreign conduct subsequent to [ION's] infringement was necessary to give rise to the injury." Brief for Respondent 22. Those overseas events were merely incidental to the infringement. In other words, they do not have "primacy" for purposes of the extraterritoriality analysis. *Morrison*, *supra*, at 267.

ION also draws on the conclusion in *RJR Nabisco* that "RICO damages claims" based "entirely on injury suffered abroad" involve an extraterritorial application of 18 U. S. C. §1964(c). 579 U. S., at ___ (slip op., at 27). From this principle, ION extrapolates a general rule that damages awards for foreign injuries are always an extraterritorial application of a damages provision. This argument misreads *RJR Nabisco*. That portion of *RJR Nabisco* interpreted a substantive element of a cause of action, not

a remedial damages provision. See *id.,* at \_\_\_ (slip op., at 18). It explained that a plaintiff could not bring a damages claim under §1964(c) unless he could prove that he was "'injured in his business or property,'" which required proof of "a *domestic* injury." *Ibid.* Thus, *RJR Nabisco* was applying the presumption against extraterritoriality to interpret the scope of §1964(c)'s injury requirement; it did not make any statements about damages—a separate legal concept.

Two of our colleagues contend that the Patent Act does not permit damages awards for lost foreign profits. *Post*, at 1 (GORSUCH, J., joined by BREYER, J., dissenting). Their position wrongly conflates legal injury with the damages arising from that injury. See *post*, at 2–3. And it is not the better reading of "the plain text of the Patent Act." *Post*, at 9. Taken together, §271(f)(2) and §284 allow the patent owner to recover for lost foreign profits. Under §284, damages are "adequate" to compensate for infringement when they "plac[e] [the patent owner] in as good a position as he would have been in" if the patent had not been infringed. *General Motors Corp., supra*, at 655. Specifically, a patent owner is entitled to recover "'the difference between [its] pecuniary condition after the infringement, and what [its] condition would have been if the infringement had not occurred.'" *Aro Mfg. Co., supra,* at 507. This recovery can include lost profits. See *Yale Lock Mfg. Co.* v. *Sargent*, 117 U. S. 536, 552–553 (1886). And, as we hold today, it can include lost foreign profits when the patent owner proves infringement under §271(f)(2).[3]

\*    \*    \*

We hold that WesternGeco's damages award for lost

----

[3] In reaching this holding, we do not address the extent to which other doctrines, such as proximate cause, could limit or preclude damages in particular cases.

profits was a permissible domestic application of §284. The judgment of the Federal Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 16–1011

_____

## WESTERNGECO LLC, PETITIONER _v._ ION GEOPHYSICAL CORPORATION

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FEDERAL CIRCUIT

[June 22, 2018]

JUSTICE GORSUCH, with whom JUSTICE BREYER joins, dissenting.

The Court holds that WesternGeco's lost profits claim does not offend the judicially created presumption against the extraterritorial application of statutes. With that much, I agree. But I cannot subscribe to the Court's further holding that the terms of the Patent Act permit awards of this kind. In my view the Act's terms prohibit the lost profits sought in this case, whatever the general presumption against extraterritoriality applicable to all statutes might allow. So while the Federal Circuit may have relied in part on a mistaken extraterritoriality analysis, I respectfully submit it reached the right result in concluding that the Patent Act forecloses WesternGeco's claim for lost profits.

The reason is straightforward. A U. S. patent provides a lawful monopoly over the manufacture, use, and sale of an invention within this country only. Meanwhile, WesternGeco seeks lost profits for uses of its invention beyond our borders. Specifically, the company complains that it lost lucrative foreign surveying contracts because ION's customers used its invention overseas to steal that business. In measuring its damages, WesternGeco assumes it could have charged monopoly rents abroad premised on a U. S. patent that has no legal force there. Permitting damages

of this sort would effectively allow U. S. patent owners to use American courts to extend their monopolies to foreign markets. That, in turn, would invite other countries to use their own patent laws and courts to assert control over our economy. Nothing in the terms of the Patent Act supports that result and much militates against it.

Start with the key statutory language. Under the Patent Act, a patent owner enjoys "the right to exclude others from making, using, offering for sale, or selling the invention *throughout the United States*." 35 U. S. C. §154(a)(1) (emphasis added). Emphasizing the point, the Act proceeds to explain that to "infring[e] the patent" someone must "without authority mak[e], us[e], offe[r] to sell, or sel[l] [the] patented invention, *within the United States*." §271(a) (emphasis added). So making, using, or selling a patented invention *inside* the United States invites a claim for infringement. But those same acts *outside* the United States do not infringe a U. S. patent right.

These principles work their way into the statutory measure of damages too. A patent owner who proves infringement is entitled to receive "damages adequate to compensate *for the infringement*." §284 (emphasis added). Because an infringement must occur within the United States, that means a plaintiff can recover damages for the making, using, or selling of its invention within the United States, but not for the making, using, or selling of its invention elsewhere.

What's the upshot for our case? The jury was free to award WesternGeco royalties for the infringing products ION produced in this country; indeed, ION has not challenged that award either here or before the Federal Circuit. If ION's infringement had cost WesternGeco sales in this country, it could have recovered for that harm too. At the same time, WesternGeco is not entitled to lost profits caused by the use of its invention *outside* the United

States. That foreign conduct isn't "infringement" and so under §284's plain terms isn't a proper basis for awarding "compensat[ion]." No doubt WesternGeco thinks it unfair that its invention was used to compete against it overseas. But that's simply not the kind of harm for which our patent laws provide compensation because a U. S. patent does not protect its owner from competition beyond our borders.

This Court's precedents confirm what the statutory text indicates. In *Brown* v. *Duchesne*, 19 How. 183 (1857), the Court considered whether the use of an American invention on the high seas could support a damages claim under the U. S. patent laws. It said no. The Court explained that "the use of [an invention] outside of the jurisdiction of the United States is not an infringement of [the patent owner's] rights," and so the patent owner "has no claim to any compensation for" that foreign use. *Id.,* at 195–196. A defendant must "compensate the patentee," the Court continued, only to the extent that it has "com[e] in competition with the [patent owner] where the [patent owner] was entitled to the exclusive use" of his invention— namely, within the United States. *Id.,* at 196. What held true there must hold true here. ION must compensate WesternGeco for its intrusion on WesternGeco's exclusive right to make, use, and sell its invention in the United States. But WesternGeco "has no claim to any compensation for" noninfringing uses of its invention "outside of the jurisdiction of the United States." *Id.,* at 195–196.[1]

——————

[1] The Solicitor General disputes this reading of *Duchesne*. In his view, the Court indicated that, if a defendant "committed domestic infringement" by making the invention in the United States, the patent owner would have been entitled to recover for any subsequent use of the invention, including "'the use of this improvement . . . on the high seas.'" Brief for United States as *Amicus Curiae* 17 (quoting *Duchesne*, 19 How., at 196). I am unpersuaded. The Court proceeded to explain that the "only use" of the invention that might require compensation

Other precedents offer similar teachings. In *Birdsall* v. *Coolidge*, 93 U. S. 64 (1876), the Court explained that damages are supposed to compensate a patent owner for "the unlawful acts of the defendant." *Ibid.* To that end, the Court held, damages "shall be *precisely commensurate* with the injury suffered, neither more nor less." *Ibid.* (emphasis added). It's undisputed that the only injury WesternGeco suffered here came from ION's infringing activity within the United States. A damages award that sweeps much more broadly to cover third parties' noninfringing foreign uses can hardly be called "precisely commensurate" with that injury.

This Court's leading case on lost profit damages points the same way. In *Yale Lock Mfg. Co.* v. *Sargent*, 117 U. S. 536 (1886), the patent owner "availed himself of his exclusive right by keeping his patent a monopoly" and selling the invention himself. *Id.*, at 552. As damages for a competitor's infringement of the patent, the patent owner could recover "the difference between his pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred." *Ibid.* And that difference, the Court held, "is to be measured" by the additional profits the patent owner "would have realized from such sales if the infringement had not interfered with such monopoly." *Id.*, at 552–553. So, again, the Court tied the measure of damages to the degree of interference with the patent owner's exclusive right to make, use, and sell its invention. And, again, that much is missing here because foreign uses of WesternGeco's invention

_____

was "in navigating the vessel into and out of [Boston] harbor, . . . *while she was within the jurisdiction of the United States*." *Id.,* at 196 (emphasis added). With respect to uses outside the United States, the Court made clear that "compensation" was unavailable. *Id.,* at 195–196. Tellingly, WesternGeco does not adopt the Solicitor General's reading of *Duchesne*—or even cite the case.

could not have interfered with its U. S. patent monopoly.[2]

You might wonder whether §271(f)(2) calls for a special exception to these general principles. WesternGeco certainly thinks it does. It's true, too, that §271(f)(2) expressly refers to foreign conduct. The statute says that someone who exports a specialized component, "intending that [it] will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer." From this language, you might wonder whether §271(f)(2) seeks to protect patent owners from the foreign conduct that occurred in this case.

It does not. Section 271(f)(2) modifies the circumstances when the law will treat an invention as having been made within the United States. It permits an infringement claim—and the damages that come with it—not only when someone produces the complete invention in this country for export, but also when someone exports key components of the invention for assembly aboard. A person who ships components from the United States intending they be assembled across the border is "liable" to the patent owner for royalties and lost profits the same as if he made the entire invention here. §271(f)(2). But none of this changes

_____

[2] WesternGeco claims this Court permitted recovery based on foreign sales of an invention in *Manufacturing Co.* v. *Cowing*, 105 U. S. 253 (1882), but the Court never mentioned, much less decided, the issue. It merely observed, in passing, that the only markets for the invention at issue were "the oil-producing regions of Pennsylvania and Canada." *Id.,* at 256. The Court did not even say whether the Canada-bound products were actually sold *in* Canada (as opposed, say, to Canadian buyers in the United States). Meanwhile, in *Dowagiac Mfg. Co.* v. *Minnesota Moline Plow Co.*, 235 U. S. 641 (1915), the Court *rejected* "recovery of either profits or damages" for products sold in Canada. *Id.,* at 650. And while it distinguished *Cowing* on the ground that the defendants there had made the infringing articles in the United States, that hardly elevated *Cowing*'s failure to address the foreign sales issue into a reasoned decision on the question.

the bedrock rule that *foreign uses* of an invention (even an invention made in this country) do not infringe a U. S. patent. Nor could it. For after §271(f)(2)'s adoption, as before, patent rights exclude others from making, using, and selling an invention only "throughout the United States." §154(a)(1).

The history of the statute underscores the point. In *Deepsouth Packing Co.* v. *Laitram Corp.*, 406 U. S. 518 (1972), the Court held that a defendant did not "make" an invention within the United States when it produced the invention's components here but sold them to foreign buyers for final assembly abroad. *Id.,* at 527–528. The Court recognized that, if the defendant had assembled the parts in this country and then sold them to the foreign buyers, it would have unlawfully made and sold the invention within the United States. *Id.*, at 527. But because what it made and sold in this country "fell short" of the complete invention, the Court held, the patent laws did not prohibit its conduct. *Ibid.* The dissent, by contrast, argued that for all practical purposes the invention "was *made* in the United States" since "everything was accomplished in this country except putting the pieces together." *Id.,* at 533 (opinion of Blackmun, J.). Apparently Congress agreed, for it then added §271(f)(2) and made clear that someone who *almost makes* an invention in this country may be held liable as if he made the complete invention in this country. As the Solicitor General has explained, the new statute "effectively treat[ed] the *domestic supply* of the components of a patented invention for assembly abroad as tantamount to the *domestic manufacture* of the completed invention for export." Brief for United States as *Amicus Curiae* 22 (emphasis added). Section 271(f)(2) thus expands what qualifies as *making an invention in this country* but does nothing to suggest that U. S. patents protect against—much less guarantee compensation for— *uses abroad*.

Any suggestion that §271(f)(2) provides protection against foreign uses would also invite anomalous results. It would allow greater recovery when a defendant exports a *component* of an invention in violation of §271(f)(2) than when a defendant exports the *entire* invention in violation of §271(a). And it would threaten to "'conver[t] a single act of supply from the United States into a springboard for liability.'" *Microsoft Corp.* v. *AT&T Corp.*, 550 U. S. 437, 456 (2007). Here, for example, supplying a single infringing product from the United States would make ION responsible for any foreseeable harm its customers cause by using the product to compete against WesternGeco worldwide, even though WesternGeco's U. S. patent doesn't protect it from such competition. It's some springboard, too. The harm flowing from foreign uses in this case appears to outstrip wildly the harm inflicted by ION's domestic production: the jury awarded $93.4 million in lost profits from uses in 10 foreign surveys but only $12.5 million in royalties for 2,500 U. S.-made products.

Even more dramatic examples are not hard to imagine. Suppose a company develops a prototype microchip in a U. S. lab with the intention of manufacturing and selling the chip in a foreign country as part of a new smartphone. Suppose too that the chip infringes a U. S. patent and that the patent owner sells its own phone with its own chip overseas. Under the terms of the Patent Act, the developer commits an act of infringement by creating the prototype here, but the additional chips it makes and sells outside the United States do not qualify as infringement. Under WesternGeco's approach, however, the patent owner could recover any profits it lost to that foreign competition—or even three times as much, see §284— effectively giving the patent owner a monopoly over foreign markets through its U. S. patent. That's a very odd role for U. S. patent law to play in foreign markets, as "foreign law alone, not United States law," is supposed to

govern the manufacture, use, and sale "of patented inventions in foreign countries." *Microsoft*, *supra*, at 456.

Worse yet, the tables easily could be turned.  If our courts award compensation to U. S. patent owners for foreign uses where our patents don't run, what happens when foreign courts return the favor?  Suppose our hypothetical microchip developer infringed a foreign patent in the course of developing its new chip abroad, but then mass produced and sold the chip in the United States.  A foreign court might reasonably hold the U. S. company liable for infringing the foreign patent in the foreign country.  But if it followed WesternGeco's theory, the court might then award monopoly rent damages reflecting a right to control the market for the chip in *this* country— even though the foreign patent lacks any legal force here.  It is doubtful Congress would accept that kind of foreign "control over our markets." *Deepsouth*, *supra,* at 531.  And principles of comity counsel against an interpretation of our patent laws that would interfere so dramatically with the rights of other nations to regulate their own economies.  While Congress may seek to extend U. S. patent rights beyond our borders if it chooses, cf. §105 (addressing inventions made, used, and sold in outer space), nothing in the Patent Act fairly suggests that it has taken that step here.

Today's decision unfortunately forecloses further consideration of these points.  Although its opinion focuses almost entirely on why the presumption against extraterritoriality applicable to all statutes does not forbid the damages sought here, the Court asserts in a few cursory sentences that the Patent Act by its terms allows recovery for foreign uses in cases like this. See *ante,* at 9.  In doing so, the Court does not address the textual or doctrinal analysis offered here.  It does not explain why "damages adequate to compensate *for the infringement*" should include damages for harm from *noninfringing* uses.  §284

(emphasis added). It does not try to reconcile its holding with the teachings of *Duchesne*, *Birdsall*, and *Yale Lock*. And it ignores *Microsoft*'s admonition that §271(f)(2) should not be read to create springboards for liability based on foreign conduct. Instead, the Court relies on two cases that do not come close to supporting its broad holding. In *General Motors Corp.* v. *Devex Corp.*, 461 U. S. 648 (1983), the Court held that prejudgment interest should normally be awarded so as to place the patent owner "in as good a position as [it] would have been in had the infringer" not infringed. *Id.,* at 655. Allowing recovery for foreign uses, however, puts the patent owner in a *better* position than it was before by allowing it to demand monopoly rents outside the United States as well as within. In *Aro Mfg. Co.* v. *Convertible Top Replacement Co.*, 377 U. S. 476 (1964), meanwhile, the Court simply applied *Yale Lock*'s rule that a patent owner may recover "'the difference between his pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred.'" *Id.,* at 507 (quoting *Yale Lock*, 117 U. S., at 552). As we've seen, that test seeks to measure the interference with the patent owner's lawful monopoly over *U. S.* markets alone.

By failing to heed the plain text of the Patent Act and the lessons of our precedents, the Court ends up assuming that patent damages run (literally) to the ends of the earth. It allows U. S. patent owners to extend their patent monopolies far beyond anything Congress has authorized and shields them from foreign competition U. S. patents were never meant to reach. Because I cannot agree that the Patent Act requires that result, I respectfully dissent.