BRISCOE, J., concurring.
I concur in the judgment. I agree with the majority that AdPacks are "securities" within the meaning of the 1933 and 1934 securities acts, Maj. Op. 1219-22, that Scoville did not adequately preserve the personal liability issue, id. at 1225 n.11, and that the SEC is likely to prove that the Defendants' conduct violated the antifraud provisions of the securities acts and their accompanying regulations, id. at 1222-23. I am not persuaded, however, as the majority appears to assume, that the AdPack sales at issue were foreign sales outside of the United States. Absent that assumption there would be no need to address in this case whether the antifraud provisions of the securities acts apply extraterritorially. I write separately to endorse the ruling of the district court, Aplt. App. at 2091-94, and as also advanced by the SEC on appeal, Resp. Br. 52-57, that under Morrison v. Nat'l Australia Bank Ltd., 561 U.S. 247, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010), Traffic Monsoon sold AdPacks in the United States. Therefore, the securities acts and their accompanying regulations cover the Defendants' domestic activity even if a large percentage of the AdPack buyers purchased the securities while abroad.
As explained by the majority, the Supreme Court has developed a two-step test to determine questions of extraterritoriality. WesternGeco LLC v. ION Geophysical Corp., --- U.S. ----, 138 S.Ct. 2129, 2136, 201 L.Ed.2d 584 (2018). We have discretion to begin the analysis at step one or two, id. at 2136-37, and if either step is satisfied then the statute applies to the challenged conduct, see id. at 2136. I would resolve this case at step two.
"Under the second step of [the] framework, we must identify the statute's focus," WesternGeco, 138 S.Ct. at 2137 (citing RJR Nabisco, Inc. v. European Cmty., --- U.S. ----, 136 S.Ct. 2090, 2101, 195 L.Ed.2d 476 (2016) ) (internal quotation marks omitted), and the Supreme Court has clarified that "the focus of the Exchange Act is ... upon purchases and sales of securities in the United States,"
*1226 Morrison, 561 U.S. at 266, 130 S.Ct. 2869. Morrison provides the test for liability under § 10(b). As Morrison explains, based on the text of § 10(b),[1] we ask "whether the purchase or sale [of the security] [wa]s made in the United States, or involve[d] a security listed on a domestic exchange." 561 U.S. at 269-70, 130 S.Ct. 2869 (emphasis added). Since AdPacks were not listed on a domestic exchange, we must decide if either the "purchase[s]" or the "sale[s]" were "made in the United States."
The Second, Third, and Ninth Circuits have adopted the "irrevocable liability" test to determine where a security "sale" or "purchase" occurs under Morrison and § 10(b). See Absolute Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60, 67 (2d Cir. 2012) ("[W]e hold that transactions involving securities that are not traded on a domestic exchange are domestic if irrevocable liability is incurred or title passes within the United States."); see also Stoyas v. Toshiba Corp., 896 F.3d 933, 949 (9th Cir. 2018), petition for cert. filed, (U.S. Oct. 17, 2018) (No. 18-486); United States v. Georgiou, 777 F.3d 125, 137 (3d Cir. 2015). As the Second Circuit has explained, a domestic transaction occurs when "the purchaser incur[s] irrevocable liability within the United States to take and pay for a security, or [when] the seller incur[s] irrevocable liability within the United States to deliver a security." Absolute Activist, 677 F.3d at 68. While "irrevocable liability" may appear to turn on contract principles and "the location of the securities transactions at issue," see id. at 70 (emphasis added), the Second Circuit later clarified that "territoriality under Morrison concerns where, physically, the purchaser or seller committed him or herself, not where, as a matter of law, a contract is said to have been executed." United States v. Vilar, 729 F.3d 62, 77 n.11 (2d Cir. 2013) (citing Morrison, 561 U.S. at 268, 130 S.Ct. 2869 ). It appears, then, that the irrevocable liability test is a fact intensive inquiry to determine whether a "sale" or "purchase" of "any security not so registered" occurred in the United States.
In this case, Traffic Monsoon was based in the United States and operated out of the United States when selling its securities. As found by the district court, Scoville registered Traffic Monsoon with the State of Utah as a limited liability company. Scoville filed organizational documents with the State of Utah which identified Scoville as Traffic Monsoon's sole member, manager, and registered agent. Scoville listed his apartment's address in Murray, Utah, as Traffic Monsoon's corporate address. Traffic Monsoon sold AdPacks via the internet, and the record further demonstrates that Traffic Monsoon made its sales through computer servers based solely in the United States. Under any common sense reading of Morrison and § 10(b), Traffic Monsoon made several securities sales in the United States. That many AdPack buyers were abroad when they purchased the securities over the internet does not alter this conclusion. Neither does Scoville's argument that he was in the United Kingdom for a period while Traffic Monsoon sold AdPacks since Traffic Monsoon executed all the AdPack sales in an automated manner in the United States.
The analysis under § 17(a) is similar. Section 17(a) makes it "unlawful for any person in the offer or sale of any securities *1227 ... to employ any device, scheme, or artifice to defraud, or ... to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser." 15 U.S.C. § 77q(a)(1), (3) (emphasis added). Under the same reasoning illustrated above, Traffic Monsoon made "sale[s]" or "offer[s]" of "securities" in the United States within the meaning of § 17(a).
Accordingly, I would affirm because, as explained by the district court, the SEC sufficiently established that the Defendants sold securities in the United States in violation of the securities acts and their accompanying regulations.

Section 10(b) makes it unlawful
[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
15 U.S.C. § 78j(b) (emphasis added).